EXHIBIT 1

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NASSAU**

-------------------------------------------------------------

**DIANE CAVANAUGH,**

           **Plaintiff**

      **v.**

**NORTHWELL HEALTH, INC.,**

        **Defendant.**

-------------------------------------------------------------

Index No.:

**SUMMONS**

**VENUE**
Nassau County

**BASIS OF VENUE**
Venue is proper in this case pursuant to CPLR §
503 because the complained of actions giving rise
to Plaintiff's complaint occurred in Nassau
County, New York and Defendant is located in
Nassau County, New York.

**TO THE ABOVE NAMED DEFENDANT:**

      **YOU ARE HEREBY SUMMONED** and required to serve upon Plaintiff's attorney, an
answer to the complaint in this action within twenty (20) days after the service of this summons,
exclusive of the day of service (or within thirty (30) days after the service is complete if this summons
is not personally delivered to you within the State of New York); and, in case of your failure to appear
or answer, judgment will be taken against you by default for the relief demanded in the complaint.

**Dated:**      **New York, New York**
              **March 11, 2021**

                              **NESENOFF & MILTENBERG, LLP**
                              *Attorneys for Plaintiff*

             **By:**    **/s/ Andrew T. Miltenberg**_____
                       **Andrew T. Miltenberg, Esq.**
                       **Gabrielle M. Vinci, Esq.**
                       **363 Seventh Avenue, 5th Floor**
                       **New York, New York 10001**
                       **Telephone: (212) 736-4500**
                       amiltenberg@nmllplaw.com
                       gvinci@nmllplaw.com

**TO:**   **Northwell Health, Inc.**
       **300 Community Drive**
       **Manhasset, New York 11030**

Case 2:21-cv-01381-EK-ARL Document 1-1 Filed 03/16/21 Page 3 of 23 PageID #: 7

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NASSAU**
---------------------------------------------------------X

**DIANE CAVANAUGH,**

                   **Plaintiff,**

**v.**

**NORTHWELL HEALTH, INC.,**

                   **Defendant.**
---------------------------------------------------------X

**Index No.**

**VERIFIED COMPLAINT**

**Jury Trial Demanded**

Plaintiff Diane Cavanaugh (hereinafter, "Plaintiff" or "Ms. Cavanaugh"), by and through her attorneys, Nesenoff & Miltenberg, LLP, whose offices are located at 363 Seventh Avenue, Fifth Floor, New York, New York 10001, alleges upon knowledge with respect to herself, and upon knowledge, information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1.      Northwell Health, Inc. (hereinafter, "Northwell" or "Defendant") purports to commit itself to "diversity and [the] inclusion of all people" by employing a "diverse workforce." Behind closed doors, however, New York's largest health system openly rejected its commitment to diversity, in favor of blatant discrimination against its own employees. Indeed, from nearly the outset of her tenure with Northwell's IT team, Ms. Cavanaugh was set up to fail; her supervisor openly and intentionally failed to provide Ms. Cavanaugh with the requisite training for her position, repeatedly shifted Ms. Cavanaugh's work assignments and duties so as never to provide her with equal footing to her peers, and openly favored younger, less qualified employees to Ms. Cavanaugh's direct disadvantage.

2.      Accordingly, this is a civil action brought on behalf of plaintiff Diane Cavanaugh, a former Northwell employee, against defendant Northwell Health, Inc. for age discrimination and

1

Case 2:21-cv-01381-EK-ARL    Document 1-1    Filed 03/16/21    Page 4 of 23 PageID #: 8

retaliation in violation of the New York State Human Rights Law (N.Y. Exec. Law §§ 290 et seq.,

"NYSHRL"), along with any and all other causes of action which can be reasonably inferred from

the facts as set forth below.

## JURISDICTION AND VENUE

3.      This Court has original jurisdiction over Plaintiff's claims pursuant to CPLR §§

301 and 302.

4.      Venue is proper in this case pursuant to CPLR § 503 because the complained of

actions giving rise to Plaintiff's complaint occurred in Nassau County, New York and Defendant

is located in Nassau County, New York.

## PARTIES

5.      Plaintiff is a resident of the State of Rhode Island who is over the age of forty.

6.      At all times relevant herein, Plaintiff was an "employee" of Defendant as the term

is defined by the New York State Human Rights Law.

7.      Defendant is a large healthcare provider with its headquarters located at 300

Community Drive, Manhasset, New York 11030.

8.      At all times relevant herein, Defendant was Plaintiff's "employer," as that term is

described in the New York State Human Rights Law.

## FACTUAL ALLEGATIONS

**Plaintiff Interviews for Employment at Northwell and**
**Is Hired for A Position Under False Pretenses**

9.      In September of 2017, Ms. Cavanaugh was invited to apply for a position with

Northwell within Defendant's Laboratory Information Systems ("LIS") department.

10.     Plaintiff understood that she was applying for an IT position and was confident in

her qualifications and work history in Healthcare IT and IT Project Manager roles.

2

Case 2:21-cv-01381-EK-ARL   Document 1-1   Filed 03/16/21   Page 5 of 23 PageID #: 9

11.    On or about September 20, 2017, Ms. Cavanaugh participated in her first interview for the LIS position.

12.    She was interviewed by Michael Eller and Cheryl Schleicher ("Ms. Schleicher").

13.    During the interview, Ms. Cavanaugh learned that the role contemplated work in operations within Defendant's lab.

14.    Ms. Cavanaugh, wanting to be as transparent as possible, was immediately forthright regarding her limited lab experience and limited experience in operations.

15.    In response, Ms. Cavanaugh was told that, if she was hired for any operations or lab position, she would receive adequate training and support to help her.

16.    Thereafter, Ms. Cavanaugh participated in several subsequent interviews regarding her application.

17.    During her interviews, she was advised of a new, complex, and large project involving operations management of lab equipment at Northwell's Center for Advanced Medicine ("CFAM").

18.    Upon information and belief, CFAM was the second largest clinical laboratory in the world at that time.

19.    At all times, Ms. Cavanaugh was upfront and transparent about her limited experience in lab operations management. Plaintiff was confused why the interviews focused so heavily on operations when she had applied for an IT job, a position she had vast knowledge and experience in.

20.    On or about October 10, 2017, Mr. Cavanaugh met with Ms. Schleicher one on one at Ms. Schleicher's request.

3

Case 2:21-cv-01381-EK-ARL  Document 1-1  Filed 03/16/21  Page 6 of 23 PageID #: 10

21.     During their meeting, Ms. Schleicher confided to Plaintiff that some in Northwell's administration had reservations about hiring Plaintiff for the role because of her limited lab experience.

22.     Ms. Schleicher told Plaintiff that, despite her colleagues' reservations, Ms. Schleicher wanted to hire Ms. Cavanaugh.

23.     Plaintiff expressed her concern over the operations side of the position and re-iterated that she had applied for an IT role.

24.     In response, Ms. Schleicher advised that Plaintiff would be brought on to work on standard LIS IT projects, and assured Plaintiff that she would receive adequate training and support for any operations tasks she was assigned.

25.     With these assurances, Plaintiff accepted Ms. Schleicher's offer and commenced employment with Northwell on or about November 1, 2017.

26.     As it would turn out, Ms. Schleicher's assurances were nothing more than empty promises and, upon information and belief, were intentionally meant to mislead Ms. Cavanaugh into accepting a role Ms. Schleicher knew and expected Plaintiff to fail in.

**Plaintiff's New Team Warns Her About Ms. Schleicher's History**

27.      Upon starting with Northwell, Ms. Cavanaugh was assigned to work with a team and first reported to Northwell's 5 Dakota Drive, New Hyde Park location.

28.     At the time of Plaintiff's hire, and throughout her tenure, Plaintiff's supervisor was Ms. Schleicher.

29.     At the time of Plaintiff's employment with Northwell, Plaintiff was 63 years old.

30.     Upon information and belief, Ms. Schleicher was and is younger than Ms. Cavanaugh.

4

Case 2:21-cv-01381-EK-ARL   Document 1-1   Filed 03/16/21   Page 7 of 23 PageID #: 11

31.     In fact, the majority, if not all, of Ms. Cavanaugh's teammates and colleagues were much younger than her. They were, upon information and belief, in their 20's and 30's.

32.     On or about her first day of work, November 3, 2017, Ms. Cavanaugh was assigned to work at a cubicle space that she noticed was filled with files, presumably from her predecessor.

33.     The cubicle was woefully underequipped, as it did not have a phone or other necessary equipment.

34.     In addition, Ms. Cavanaugh was not given a user login or access to Defendant's computer network, thereby prohibiting her from performing any of her necessary job duties or tasks.

35.     Later, Ms. Schleicher confirmed that the files at Plaintiff's cubicle belonged to her predecessor.

36.     Ms. Schleicher explicitly instructed Plaintiff not to read or discuss the files with anyone. This made Plaintiff suspicious but she, of course, agreed to abide by her supervisor's instruction.

37.     Not long thereafter, Ms. Cavanaugh heard stories from her colleagues regarding Ms. Schleicher's history at Northwell.

38.     As told by Plaintiff's colleagues, Ms. Schleicher had a reputation as being a tough, indeed borderline "bully", supervisor who was demanding of everyone's time and attention.

39.     According to rumors told to Plaintiff, Ms. Schleicher had been fired from Northwell before and internally transferred several times as new issues arose in nearly every location she was assigned.

Case 2:21-cv-01381-EK-ARL   Document 1-1   Filed 03/16/21   Page 8 of 23 PageID #: 12

40.     In addition, Ms. Cavanaugh learned from her colleague, "Amanda", that her predecessor, Renee Almon ("Ms. Almon"), had been a longtime employee at Northwell who was fired by Ms. Schleicher after Ms. Almon spoke up to Ms. Schleicher.

41.     Upon information and belief, following her termination by Ms. Schleicher, Ms. Almon returned to a previously held position with Northwell, further proof that her termination was not based on any performance issue but rather Ms. Schleicher's animus against Ms. Almon.

42.     Amanda described Plaintiff's predecessor as an "older" woman, "like [Ms. Cavanaugh]".

43.     Amanda further confided that she was surprised Ms. Schleicher had hired another "senior" employee.

44.     Upon information and belief, Amanda meant that she was surprised Ms. Schleicher had hired someone as old as Ms. Cavanaugh.

45.     Although Ms. Cavanaugh found the description of Ms. Schleicher as tough and demanding a bit intimidating, she was sure that she would be able to deal with a tough boss and still perform satisfactorily.

46.     However, Ms. Cavanaugh was very alarmed at Amanda's statements that it was shocking Ms. Schleicher had hired an older-aged employee; Ms. Cavanaugh hoped that her age would not have any effect on her relationship with Ms. Schleicher or the pair's ability to work together.

**Ms. Cavanaugh Is Assigned a Large**
**Caseload Without Any Direction or Training**

47.     Within Plaintiff's first week of employment, Ms. Schleicher assigned Ms. Cavanaugh approximately six lab IT projects. Although this was not an exorbitant caseload for an

6

INDEX NO. 602966/2021
RECEIVED NYSCEF: 03/11/2021

Case 2:21-cv-01381-EK-ARL Document 1-1 Filed 03/16/21 Page 9 of 23 PageID #: 13

experienced employee, this *was* an overwhelming and uncommon amount of cases to assign to a new person not yet familiar with such projects.

48.     The projects were haphazardly assigned to Plaintiff with little to no instruction, guidance, or background provided by Defendant.

49.     In essence, Ms. Cavanaugh was left to figure things out on her own and either sink or swim; Plaintiff had the distinct feeling that Ms. Schleicher was intentionally setting her up to fail.

50.     Making matters worse, Ms. Schleicher consistently provided Ms. Cavanaugh with conflicting instruction and background on the projects Plaintiff was assigned, making it close to impossible to actually attend to her work.

51.     On numerous occasions, Ms. Schleicher would give Ms. Cavanaugh incomplete, and sometimes blatantly wrong, instructions, and often contradicted herself when telling Plaintiff what she was required to do.

52.     Ms. Schleicher admitted to Plaintiff, almost as a point of pride, that she never takes notes, which was abundantly obvious as she repeatedly forgot assignments she had given to Plaintiff, and would frequently berate Ms. Cavanaugh for failing to complete assignments Plaintiff was never given.

53.     Ms. Schleicher repeatedly changed the priority level of the projects assigned to Plaintiff, leaving Ms. Cavanaugh utterly confused as to what project she was expected to tackle first.

54.     When Ms. Cavanaugh asked for clarification, Ms. Schleicher only offered the utterly unhelpful instruction that all the projects were a priority.

7

Case 2:21-cv-01381-EK-ARL  Document 1-1  Filed 03/16/21  Page 10 of 23 PageID #: 14

55.     Ms. Cavanaugh, politely and respectfully, advised Ms. Schleicher that she was receiving conflicting instruction and assignments from her which were making it difficult to complete her job.

56.     Rather than use the opportunity to give Ms. Cavanaugh clarity and address Plaintiff's concerns, Ms. Schleicher seemingly took offense to Ms. Cavanaugh's statements and escalated her behavior, leaving Plaintiff utterly confused and helpless.

57.     Ms. Cavanaugh felt that she was in a lose-lose situation.

58.     Plaintiff's supervisor intentionally and repeatedly provided her with conflicting instruction while simultaneously refusing to explain what it was that Plaintiff was expected to do and refusing to offer any of the previously assured support and training; if Plaintiff asked for help, she was chastised for not knowing what to do, if she did not ask for help, she was chastised for not doing things correctly.

59.     Making matters worse, after confronting Ms. Schleicher, Plaintiff noticed Ms. Schleicher take an increased interest in supervising her, often times walking up and standing behind Plaintiff's back as Ms. Cavanaugh worked, as if to watch over Plaintiff's shoulder.

60.     In stark contrast to her approach of onboarding and working with Plaintiff, Ms. Schleicher seemingly took extra care to assist and explain assignments to Plaintiff's younger colleagues.

61.     Indeed, Ms. Schleicher routinely checked in with Plaintiff's younger colleagues to answer any questions they had and to ensure they were provided all the necessary tools and guides to assist them in their tasks.

62.     In addition, Ms. Cavanaugh did not notice Ms. Schleicher similarly stalk and micro-manage the younger employees in the workplace.

8

Case 2:21-cv-01381-EK-ARL   Document 1-1   Filed 03/16/21   Page 11 of 23 PageID #: 15

**Ms. Schleicher Shows A Breathtakingly Open**
**Preference for A Younger Project Manager Over Plaintiff**

63.     Ever since Plaintiff heard Amanda say she was surprised Ms. Schleicher had hired a "senior" worker, Ms. Cavanaugh was on high alert as to how Ms. Schleicher interacted with her.

64.     As it would turn out, Ms. Schleicher had no qualms about making her feelings towards Ms. Cavanaugh as an older-aged employee abundantly clear.

65.     Ms. Schleicher often commented to Ms. Cavanaugh about her preference for younger employees, and openly told Ms. Cavanaugh that she had been courting a new "young" project manager, Alex Eberle ("Ms. Eberle"), for a while.

66.     Upon information and belief, Ms. Eberle was approximately thirty-five (35) years old at the time.

67.     Upon information and belief, Ms. Eberle had little, if any, project manager experience and Ms. Schleicher was only interested in hiring her because she preferred a younger workforce.

68.     Indeed, Ms. Schleicher said as much when she told Plaintiff that she was "looking to bring in a *young* Project Manager.".

69.     Ms. Schleicher's fixation on hiring a young project manager with no experience raised concerns for Plaintiff.

70.     Even more concerning was Ms. Schleicher's insistence that Plaintiff, who was still new and learning the position herself, train Ms. Eberle.

71.     In or around December of 2017, Ms. Schleicher hired Ms. Eberle to work on Plaintiff's team.

Case 2:21-cv-01381-EK-ARL   Document 1-1   Filed 03/16/21   Page 12 of 23 PageID #: 16

72.     Ms. Eberle, upon information and belief, had little to no training or experience in project management and the responsibility for training and teaching her the ropes fell on Plaintiff.

**Ms. Cavanaugh Complains About Her Abusive Work Environment**

73.     In or around December of 2017, Plaintiff reached out to her former employment recruiter, Nancy Barker ("Ms. Barker"), about her work environment. Ms. Barker had been the recruiter working with Plaintiff at the time Plaintiff applied for, interviewed with, and was hired by Defendant.

74.     On or about December 18, 2017, Ms. Cavanaugh called Ms. Barker and described to her what was happening at Northwell.

75.     Ms. Cavanaugh explained Ms. Schleicher's behavior and poor treatment of her, the utter lack of training or support she had experienced at Northwell, and further complained about favoritism and ageism in the workplace.

**Ms. Schleicher Insists the Younger Employees**
**Are More Deserving of Support and Training**

76.     Ms. Cavanaugh continued to try and get support from her supervisor, Ms. Schleicher.

77.     In response, despite the fact that Ms. Cavanaugh was new to her role and was promised adequate training and support at the time of her hiring, Ms. Schleicher made it inescapably clear that she would not offer Ms. Cavanaugh any support.

78.     Ms. Schleicher did, however, advise that she would make herself available to support Plaintiff's younger colleagues.

79.     Indeed, Ms. Schleicher insisted to Ms. Cavanaugh that she would and *needed* to spend time "helping the younger team members" because "they are young" and could "leave", unlike Ms. Cavanaugh who was a "senior" worker and therefore in a "different situation."

10

Case 2:21-cv-01381-EK-ARL Document 1-1 Filed 03/16/21 Page 13 of 23 PageID #: 17

**Northwell Subjects Ms. Cavanaugh to an Unsafe Environment**
**And Responds to Ms. Cavanaugh's Genuine Health Concerns with Threats of Termination**

80.    In or around the end of January of 2018, Plaintiff and her team moved into a new building located at 175 Community Drive, Manhasset.

81.    Alarmingly, the new building was riddled with filth and mold which immediately and negatively affected Ms. Cavanaugh and her colleagues.

82.    Indeed, the facility was so infected with mold that black spots could be seen on the walls and ceiling, particularly by the ventilation shafts and windows, and could be smelled in the air.

83.    Ms. Cavanaugh and her colleagues began getting sick.

84.    In particular, Ms. Cavanaugh had a documented hyper-sensitivity to mold and, when exposed to mold, experienced symptoms similar to those of Multiple Sclerosis[1] ("MS").

85.    Indeed, Plaintiff had been diagnosed with MS previously but the diagnosis was later changed when it was determined her symptoms were actually due to prolonged exposure and sensitivity to toxic mold.

86.    As a result of her exposure to mold at Northwell's facility, Ms. Cavanaugh experienced severe headaches, dizziness, burning eyes, fatigue , and felt discombobulated - like her brain and thoughts were hazy and "fogged".

87.    Ms. Cavanaugh's symptoms made it difficult for Plaintiff to complete her work.

---

[1] Multiple Sclerosis, or "MS" as it is commonly called, is a "disabling disease of the brain and spinal cord" wherein the body's immune system attacks a person's nerve fibers. *See* https://www.mayoclinic.org/diseases-conditions/multiple-sclerosis/symptoms-causes/syc-20350269 (last accessed 12/1/2020). Symptoms of MS can include, among many other things, blurred or double vision, altered senses, impaired memory, headaches, and dizziness, as well as paralysis. *See* https://msfocus.org/Get-Educated/Symptoms-of-MS?gclid=CjwKCAiAiML-BRAAEiwAuWVgggHliL4HTzpttqNtNq8l9RTCUiWnIxbLdaaEH3040GWDIV61gI3bFxoCdpcQAvD_BwE (last accessed 12/1/2020).

11

Case 2:21-cv-01381-EK-ARL   Document 1-1   Filed 03/16/21   Page 14 of 23 PageID #: 18

88.     When Ms. Cavanaugh began to experience such symptoms, she, along with her colleagues, complained to Ms. Schleicher about the mold and unsafe conditions at Northwell's facility.

89.     Plaintiff also complained of the mold of working conditions to Ms. Barker.

90.     While the situation was uncomfortable for all employees, it was particularly traumatizing for Plaintiff in light of her medical history and past experiences.

91.     In response, Ms. Schleicher told Ms. Cavanaugh and Plaintiff's colleagues not to say anything about it to anyone else, and to simply "clean the dirt" themselves because Ms. Schleicher did not want to "cause a fuss."

92.     Instead of alerting Northwell's leadership to the precarious situation, Ms. Schleicher went out and purchased Plaintiff and her co-workers their own cleaning supplies to, apparently, clean the toxic mold themselves.

93.     This was clearly an insufficient solution as Ms. Cavanaugh continued to suffer from her exposure to the mold.

94.     Ms. Cavanaugh again complained of the mold and the effect her exposure to it was having on her health in a private meeting with Ms. Schleicher.

95.     In response to Plaintiff's complaints, Ms. Schleicher reminded Plaintiff that she was "still on probation", as if to threaten that if Ms. Cavanaugh pushed the issue further, Ms. Schleicher could fail her probation, effectively terminating Plaintiff's employment.

96.     In response to Ms. Schleicher's poorly veiled threat, Ms. Cavanaugh stated "well *that* would be an HR nightmare," making it clear that if she was terminated for complaining about toxic mold in her workplace, she would report it to Human Resources.

12

97.     Thereafter, in or around March 2018, Ms. Schleicher moved Ms. Cavanaugh to Northwell's facility located at 145 Community Drive, Manhasset.

98.     Unfortunately, the conditions at that facility were just as bad; Ms. Cavanaugh's new workspace was still infested with mold, as evidenced by black spots all over the ceiling, and many of the employees were visibly ill.

99.     To 'accommodate' and address Plaintiff's health concerns, Northwell decided to place Ms. Cavanaugh's workstation directly under a vent, which Northwell poorly covered with a box in an effort to, apparently, impede the blowing of toxin-riddled air directly onto Plaintiff as she worked.

100.    Plaintiff continued to experience significant symptoms due to her exposure to the mold at Northwell's facilities; Plaintiff most prevalently experienced "brain fog" which significantly affected her cognitive abilities and her ability to think at work.

101.    Eventually, despite the fact that the mold issue was not resolved, Plaintiff returned to Northwell's 175 Community Drive location to be with her team.

102.    Upon information and belief, the mold situation was never sufficiently fixed at Northwell's facility.

**Ms. Schleicher Assigns Plaintiff an Inordinately**
**Large Project and Sets Plaintiff Up to Fail**

103.    After Plaintiff had been training Ms. Eberle for some time, Ms. Schleicher pulled the rug out from under Plaintiff and assigned nearly all of Plaintiff's workload to Ms. Eberle.

104.    As a result, Ms. Cavanaugh was left with approximately one project to attend to.

105.    After Ms. Schleicher had stripped Plaintiff of nearly all of her assignments, Ms. Schleicher asked Ms. Cavanaugh what she was working on.

13

106.    When Ms. Cavanaugh responded to Ms. Schleicher's question and listed the limited number of projects she had been left with after her work was shifted to Ms. Eberle, Ms. Schleicher looked shocked and disappointed.

107.    Ms. Schleicher acted as though Ms. Cavanaugh's small caseload was somehow Plaintiff's fault and noted that is was not enough work for a "senior" worker.

108.    Ms. Cavanaugh told Ms. Schleicher that her small caseload was directly due to Ms. Schleicher taking projects aware from her to give to her younger counterpart.

109.    In response, Ms. Schleicher merely stormed away.

110.    Thereafter, Ms. Schleicher seemingly struck back at Ms. Cavanaugh for noting the projects which had been stripped away from her by unilaterally and intentionally assigning Ms. Cavanaugh a massive project that, upon information and belief, Ms. Schleicher knew Ms. Cavanaugh was not prepared to take on.

111.    Notably, this was the exact project that Plaintiff first interviewed for and was the project some in Northwell's leadership had expressed concerns that Plaintiff would not be able to handle.

112.    Ms. Schleicher was well aware of this and, upon information and belief, was purposefully setting Plaintiff up to fail.

113.    On or about January 15, 2018, during a meeting, the then Operations Project Manager for CFAM, Megan Stoller, announced that she no longer wanted to continue in her role.

114.    In front of the CFAM and IT leadership, Ms. Schleicher suddenly and without first consulting with Ms. Cavanaugh, volunteered Ms. Cavanaugh to assume the role as the CFAM Operational Project Manager.

14

Case 2:21-cv-01381-EK-ARL Document 1-1 Filed 03/16/21 Page 17 of 23 PageID #: 21

115. Ms. Cavanaugh was shocked; not only was the new role not the position she had been hired for, but it was also a role that she had repeatedly told Northwell she did not have experience in.

116. Seemingly bothered by Ms. Cavanaugh's continued efforts to speak out against her, Ms. Schleicher set Plaintiff up to fail.

117. Following the meeting, Ms. Schleicher told Plaintiff that she would support Ms. Cavanaugh and teach her everything she needed to know to be successful in the role.

118. Thereafter, once again contrary to Ms. Schleicher's representations, Ms. Schleicher only met with Ms. Cavanaugh twice, for a total of less than two hours time, to quickly run through the general operation processes for CFAM.

119. Ms. Schleicher's supposed training was woefully insufficient to even remotely prepare Plaintiff for the massive role Ms. Schleicher had just volunteered Ms. Cavanaugh for.

120. Thereafter, Plaintiff did her best to satisfactorily perform the responsibilities required of her as the Operations Project Manager at CFAM, despite several roadblocks Ms. Schleicher placed in her way.

121. For example, Ms. Schleicher repeatedly scheduled meetings without giving any information as to where the meeting was to be held.

122. In addition, Ms. Schleicher continued to give Ms. Cavanaugh inconsistent and contradictory instructions, never clearly outlined the expectations placed on Plaintiff, and never bothered to explain how her new role was connected to other administrators and employees at CFAM.

123. Although several hurdles were placed in her way, Plaintiff continued to work to the best of her ability and learned as much as she could about her new role.

15

Case 2:21-cv-01381-EK-ARL   Document 1-1   Filed 03/16/21   Page 18 of 23 PageID #: 22

124.    Ms. Cavanaugh did her best and received praise from other CFAM project managers, who commended Plaintiff's "excellent job."

125.    However, the praise for Ms. Cavanaugh only seemed to infuriate Ms. Schleicher. In response to Plaintiff's success, Ms. Schleicher cornered Plaintiff in a room and berated Plaintiff's performance; Ms. Schleicher told Plaintiff that she was only allowed to handle the CFAM project Ms. Schleicher's way.

126.    Ms. Schleicher further noted that if Ms. Cavanaugh approached the project in any other manner, Ms. Cavanaugh "would not win."

127.    Notably, the *only* person who had any idea what Ms. Schleicher's "way" of handling the project was, was Ms. Schleicher.

128.    Ms. Cavanaugh continued to complain to her former recruiter, Ms. Barker, about her hostile work environment to no avail.

129.    Moving forward, Ms. Schleicher took increasingly more aggressive measures to hinder Plaintiff's ability to perform her job duties on the CFAM project.

130.    By way of example, in or around February of 2018, Ms. Cavanaugh expressed her desire to meet with the LIS leadership.

131.    In response, Ms. Schleicher insisted that Plaintiff take one of her younger teammates with her to any meeting with LIS leadership so that Ms. Cavanaugh "won't embarrass [her]self as [she] do[esn't] know what [she is] talking about."

132.    Notably, none of Plaintiff's younger teammates, save for one who worked on a different part of the project than Ms. Cavanaugh, worked on the operations projects Ms. Cavanaugh was on and therefore would not have been able to contribute anything to any meeting with LIS leadership.

16

133.    In addition, Ms. Schleicher repeatedly and routinely left Plaintiff off of, and redirected to younger team members, vital emails regarding projects Ms. Cavanaugh was assigned to, thereby hindering Plaintiff's ability to perform her job duties.

134.    Most notably, Ms. Schleicher continued to redirect assignment and duties for which Plaintiff was responsible, to Ms. Eberle, Ms. Cavanaugh's younger comparator.

135.    In addition, Ms. Schleicher went so far as to intentionally embarrass Plaintiff in front of her peers.

136.    By way of example, following a meeting at CFAM, Ms. Schleicher openly and loudly berated Ms. Cavanaugh and accused Plaintiff of not paying attention, not being engaged during the meeting, and for texting during the meeting, all of which was completely false.

137.    In addition, on or about March 15, 2018, in front of Amanda and Ms. Eberle, Ms. Schleicher badgered Ms. Cavanaugh about her knowledge regarding a specific topic and threatened that if Ms. Cavanaugh was not knowledgeable, she would be fired.

138.    Ms. Schleicher then nonchalantly stated, "Oh, never mind, you're fired anyway."

139.    Ms. Cavanaugh was shocked and humiliated.

**Northwell Terminates Ms. Cavanaugh's Employment**

140.    On or about March 22, 2018, Ms. Cavanaugh met with Ms. Schleicher.

141.    At such time, Ms. Schleicher terminated Plaintiff's employment, effective immediately.

142.    Ms. Cavanaugh was shocked; despite Northwell's leadership team's initial reservations, Ms. Cavanaugh had received several praises regarding her job as an operations project manager.

17

Case 2:21-cv-01381-EK-ARL  Document 1-1  Filed 03/16/21  Page 20 of 23 PageID #: 24

143.    Ms. Schleicher justified Ms. Cavanaugh's sudden termination of employment on Ms. Cavanaugh's inability to "gain traction" in the lab, which Ms. Schleicher described as a "difficult place."

144.    However, any difficulty Ms. Cavanaugh had "gaining traction" was due entirely to Ms. Schleicher's lackluster management skills and open preference and support for Plaintiff's younger colleagues.

145.    Ms. Cavanaugh confronted Ms. Schleicher and asked how she could possibly "gain traction" when Ms. Schleicher repeatedly and illogically changed Ms. Cavanaugh's assignments. Ms. Schleicher did not offer any answer to Plaintiff's question.

146.    Ms. Cavanaugh was then escorted from the building.

147.    Upon information and belief, Alex, who was much younger than Plaintiff, continued to assume Ms. Cavanaugh's duties, effectively replacing Ms. Cavanaugh.

## CAUSE OF ACTION
*(Age Discrimination in Violation of the New York State Human Rights Law)*

148.    Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above as if fully set forth herein.

149.    Plaintiff is a female over the age of 40 and is, therefore, a member of a protected class.

150.    Plaintiff was qualified to work as an employee for Defendant and she satisfactorily performed the duties required by all positions she held with Defendant.

151.    As set forth in detail above, Defendant subjected Plaintiff to disparate treatment and an atmosphere of adverse employment actions and decisions because of her age.

152.    As set forth in detail above and herein, Defendant subjected Plaintiff to a hostile work environment on the basis of her age.

18

153.    The discrimination that Plaintiff suffered while employed with Defendant severely affected the terms and conditions of her employment, as set forth in detail here and above.

154.    By reason of Defendant's violations of Plaintiff's rights, Plaintiff has suffered a loss of monetary and other benefits associated with her employment.

155.    As a direct and proximate result of said unlawful employment practices, Plaintiff has suffered emotional distress.

156.    Based on the foregoing, Defendant discriminated against Plaintiff on the basis of her age in violation of the New York State Human Rights Law.

157.    As a result of Defendant's violations of the New York State Human Rights Law, Plaintiff has been damaged in an amount to be determined at trial.

### PRAYER FOR RELIEF

**WHEREFORE,** for the foregoing reasons, Plaintiff seeks a judgment against Defendant as follows:

(i)    A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned New York State laws;

(ii)    Preliminary and permanent injunctions against Defendant and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with Defendant, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

(iii)    An order restraining Defendant from any retaliation against Plaintiff for participation in any form in this litigation;

(iv)    All compensatory damages that Plaintiff has sustained as a result of the Defendant's unlawful discriminatory conduct, including back pay, front pay, damages to

19

Case 2:21-cv-01381-EK-ARL Document 1-1 Filed 03/16/21 Page 22 of 23 PageID #: 26

compensate Plaintiff for harm to her professional and personal reputation and loss of career fulfillment, emotional distress damages, general and special damages for lost compensation and employee benefits that she would have received but for the Defendant's conduct, and any other out-of-pocket losses that Plaintiff has incurred or will incur;

    (v)    Punitive and/or exemplary damages against Defendant;

    (vi)    Statutory pre- and post-judgment interest on all sums awarded;

    (vii)    An award of costs and attorneys' fees; and

    (viii)  Any other relief the Court finds just and proper.

**Dated: New York, New York**           **NESENOFF & MILTENBERG, LLP**
      **March 8, 2021**              *Attorneys for Plaintiff*

                             **By: /s/ Andrew Miltenberg**
                                  **Andrew T. Miltenberg, Esq.**
                                  **Gabrielle M. Vinci, Esq.**
                                  **363 Seventh Avenue, Fifth Floor**
                                  **New York, New York 10001**
                                  **(212) 736-4500**

20

Case 2:21-cv-01381-EK-ARL   Document 1-1   Filed 03/16/21   Page 23 of 23 PageID #: 27

## VERIFICATION

STATE OF ___RI___                          )
                                           ) ss.:
COUNTY OF ___Providence___                 )

Diane Cavanaugh, being duly sworn, deposes and says:

I am a named Plaintiff in this matter. I have read the Verified Complaint, know the contents thereof, and the same are true to my knowledge, except as to matters alleged upon information and belief and as to those matters, I believe them to be true.

_____
Diane Cavanaugh

Sworn to and subscribed before me

this ___8th___ day of ___March___, 2021.

_____
NOTARY PUBLIC

Jason Williams
Notary Public, State of Rhode Island
My Commission Expires 08/05/2023